# United States Tax Court

T.C. Memo. 2023-83

AMERICAN MILLING, LP,
UN LIMITED, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8438-13.                      Filed June 29, 2023.

————

*Anthony J. Rollins* and *John Phillip Tyler*, for petitioner.

*John W. Stevens* and *Richard J. Hassebrock*, for respondent.


## MEMORANDUM OPINION

PUGH, *Judge*:  Respondent issued a notice of final partnership administrative adjustment (FPAA) pursuant to section 6223[1] to UN Limited, the tax matters partner (TMP) of American Milling, LP (American Milling), for 2000, 2001, 2002, and 2003 (Milling FPAA). Respondent made adjustments to the income, expense, and deduction items that American Milling reported on its 2000, 2001, 2002, and 2003 federal income tax returns. Petitioner, its TMP, timely filed a Petition contesting respondent's adjustments.

In our previous opinion in this case, *American Milling, LP v. Commissioner* (*American Milling I*), T.C. Memo. 2015-192, we denied

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** petitioner's Motion to Dismiss for Lack of Jurisdiction. The only remaining issue before the Court is whether the period of limitations for assessing tax attributable to American Milling's partnership items has expired with respect to David Jump, an indirect partner of American Milling.

*Background*

This case was submitted fully stipulated under Rule 122. When the Petition was filed, American Milling had its principal place of business in Illinois.

I.  *American Boat FPAA*

In 1998 Mr. Jump engaged in a series of transactions constituting a Son-of-BOSS tax shelter. Multiple entities were formed to facilitate the tax shelter, but only two partnerships are relevant in resolving the remaining issue before us: American Boat Co., LLC (American Boat), and American Milling. The tax shelter involved the transfer of assets encumbered by significant liabilities to American Boat, which then disregarded the liabilities in computing the contributing partner's basis in the partnership. After a series of other transactions, explained in more detail in *American Milling I*, American Boat's partnership status terminated, triggering a deemed distribution of American Boat's assets (18 tugboats) with inflated bases to American Milling.

In October 1999 American Boat filed Form 1065, U.S. Return of Partnership Income, for 1998. Mr. Jump was not listed as an indirect partner on the 1998 American Boat Form 1065. In July 2006 respondent issued an FPAA for 1998 (American Boat FPAA) to American Milling, the TMP of American Boat at that time. American Milling contested the adjustments in the U.S. District Court for the Southern District of Illinois. *Am. Boat Co. v. United States*, No. 06-CV-00788 (S.D. Ill. Nov. 20, 2008), *aff'd*, 583 F.3d 471 (7th Cir. 2009). The district court ruled in favor of the government on most of the issues but rejected the accuracy-related penalty.[2]

Respondent did not assess any tax deficiency resulting from the adjustments in the American Boat FPAA against Mr. Jump after the litigation concluded in 2009.

---

[2] The U.S. Court of Appeals for the Seventh Circuit affirmed the district court's rejection of the accuracy-related penalty. *Am. Boat Co.*, 583 F.3d at 477–87.

**[*3]** II.    *Milling FPAA*

American Milling filed 2000, 2001, 2002, and 2003 Forms 1065 in May 2003, November 2003, February 2004, and November 2004, respectively. Mr. Jump was not listed as an indirect partner on any of these Forms 1065.

On January 18, 2013, respondent mailed the Milling FPAA to petitioner. Respondent determined that American Milling (1) claimed inflated depreciation deductions for 2000 through 2003 because of inflated bases in the tugboats; (2) claimed an inflated capital loss for 2002 resulting from the sale of some of the tugboats; and (3) erroneously claimed a deduction of $300,000 for 2000 for legal fees incurred in connection with the tax shelter. Petitioner is not disputing the correctness of the adjustments to American Milling's partnership items.

III.    *American Milling I*

After respondent filed his Answer, petitioner filed a Motion to Dismiss for Lack of Jurisdiction. Petitioner contended that we lacked jurisdiction to determine American Milling's partnership items, adjusted by respondent in the Milling FPAA, because it was a "reproduction" of the American Boat FPAA and violated the rule prohibiting respondent from issuing a second FPAA under section 6223(f). Alternatively, petitioner contended that we lacked jurisdiction over the Milling FPAA because (1) all adjustments in the Milling FPAA were computational adjustments flowing from the American Boat FPAA and there were no affected items requiring determinations at the American Milling level and (2) respondent did not have authority to issue the Milling FPAA because neither the Code nor the regulations authorized the issuance of an affected items FPAA.

Respondent argued that the adjustments made in the Milling FPAA were to American Milling's partnership items because the Court had to make factual determinations with respect to American Milling's basis in American Boat and its bases in tugboats received from American Boat without regard to the artificial basis inflation from the tax shelter. Specifically, respondent argued that "American Milling's basis in American Boat and its basis in tugboats received from American Boat, although affected by partnership items of American Boat, are partnership items of American Milling." Therefore, continued respondent, the tugboat bases were more appropriately determined at the partnership level, and not at a partner level. Respondent relied on

**[\*4]** our decision in *Tigers Eye Trading, LLC v. Commissioner*, 138 T.C. 67, 116–19 (2012), *aff'd in part, rev'd in part, and remanded sub nom. Logan Tr. v. Commissioner*, 616 F. App'x 426 (D.C. Cir. 2015), and argued that American Milling's basis in American Boat was not a partnership item of American Boat.

Respondent further noted that factual determinations also were necessary "to determine whether the $300,000 of legal fees claimed by American Milling . . . is allowable as an expense" because these fees were not claimed as a deduction by American Boat; therefore, the Court had to make partnership-level determinations regarding the nature of these legal fees.

In *American Milling I*, T.C. Memo. 2015-192, at \*14–15, the Court held that the Milling FPAA was not a duplicate of the American Boat FPAA. We found that the Milling FPAA was issued to a different partnership, for different tax years, and made materially different adjustments to items of income and expense. *Id.* We noted that American Milling and American Boat were separate entities for the period examined in the American Boat FPAA, and even though some of the adjustments in American Milling FPAA were related to the adjustments in the American Boat FPAA, they were not identical. *Id.*

We concluded that the adjustments in the Milling FPAA, i.e., the adjustments to depreciation, capital loss, and legal fees deductions, were adjustments to the partnership items of American Milling and that we had subject matter jurisdiction in this case.[3] *Id.* at \*21–22.

*Discussion*

I.    *Burden of Proof*

Ordinarily, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Taxpayers raising affirmative defenses such as the expiration of the period of limitations also typically bear the burden of proving that those defenses apply. *Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002). Resolution of the period of limitations issue before us does not depend on which party has the

---

[3] Because we found that the adjustments in the Milling FPAA were partnership items of American Milling "and not merely affected items," we did not address petitioner's contention that respondent did not have authority to issue an affected items FPAA. *American Milling I*, T.C. Memo. 2015-192, at \*12 n.14.

[*5] burden of proof. We resolve it on a preponderance of the evidence in the record. *See Knudsen v. Commissioner*, 131 T.C. 185, 189 (2008), *supplementing* T.C. Memo. 2007-340; *Schank v. Commissioner*, T.C. Memo. 2015-235, at *16.

II.    *Legal Background*

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, the governing statutory framework in effect during the tax years in issue, established uniform audit and litigation procedures for the resolution of partnership tax items. TEFRA provides a two-step process for resolving partnership tax matters. First, partnership items are adjusted at the partnership level in a single partnership-level proceeding. *See* §§ 6221, 6231(a)(3). A partnership item is "any item required to be taken into account for the partnership taxable year" if "such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). A nonpartnership item is "an item which is (or is treated as) not a partnership item." § 6231(a)(4). To challenge a partnership item the Internal Revenue Service (IRS) initiates an administrative proceeding against the partnership. § 6223(a)(1). The IRS then issues an FPAA to the partners informing them of the adjustments to partnership items. § 6223(a)(2). Partners can seek judicial review of the adjustments to partnership items in a partnership-level proceeding. § 6226(a) and (b)(1).

Once partnership-level adjustments are final, the IRS determines whether partnership-level adjustments require any partner-level changes, including to affected items. §§ 6225, 6231(a)(5). An affected item is "any item to the extent such item is affected by a partnership item." § 6231(a)(5). If an adjustment is merely computational and does not require partner-level factual determinations, the IRS may assess the computational adjustment without issuing a notice of deficiency. *See* §§ 6230(a)(1), 6231(a)(6); Treas. Reg. § 301.6231(a)(6)-1(a)(2); *see also Ginsburg v. Commissioner*, 127 T.C. 75, 83 (2006) (outlining the different categories of adjustments under TEFRA). If an adjustment requires partner-level determinations, the IRS must issue an affected items notice of deficiency to the partner and regular deficiency procedures apply. § 6230(a)(2)(A)(i); Treas. Reg. § 301.6231(a)(6)-1(a)(3).

This case is a partnership-level action initiated by a petition filed pursuant to section 6226. As explained above, the only issue remaining before the Court is whether the period of limitations for assessing tax

[*6] attributable to American Milling's partnership items has expired with respect to Mr. Jump, an indirect partner of American Milling, at the time the Milling FPAA was issued to petitioner.

The Code prescribes no stand-alone deadline for issuing an FPAA. *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 534 (2000). If an FPAA is issued after the time for assessing tax against the individual partner has expired, it will be of no avail because any assessment attributable to partnership items in the FPAA will be barred with respect to that partner. *Id.* at 534–35.

Under the general rule set forth in section 6501, the IRS is required to assess tax or send a notice of deficiency to a taxpayer within three years after a federal tax return is filed. *See* § 6501(a). Petitioner and respondent agree that the general limitations period in section 6501 has expired. In the case of a tax imposed on partnership (and affected) items, however, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501. *See Rhone-Poulenc Surfactants & Specialties*, 114 T.C. at 540–41. We have held that "[s]ection 6229 provides a[n] [alternative] *minimum* period of time for the assessment of any tax attributable to partnership items (or affected items)" that can extend, but not reduce, the limitation period otherwise prescribed by section 6501. *Id.* at 542; *CNT Invs., LLC v. Commissioner*, 144 T.C. 161, 186 (2015).

Section 6229(a) prescribes a minimum three-year limitations period, commencing on the later of the date on which the partnership return is filed or the last day for filing such a return, without regard to extensions, for the assessment of tax attributable to any partnership item or affected item. The timely mailing of an FPAA suspends the running of the limitations period for assessing any income tax that is attributable to any partnership item or affected item. *See* § 6229(d). The limitations period remains suspended for the period during which an action may be filed in court, during the pendency of any proceeding actually brought, and for one year thereafter. *Id.* Respondent does not dispute that the Milling FPAA was issued more than one year after the conclusion of the American Boat litigation, so section 6229(d) does not apply.

**[\*7]**   At the center of the parties' dispute is section 6229(e):

> (e) Unidentified partner.—If—
>> (1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and
>> (2)(A) the Secretary, before the expiration of the period otherwise provided under this section with respect to such partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or
>> (B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,
> the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

If a partner is an unidentified partner, then section 6229(e) holds open that partner's period of limitations until at least one year after that partner is properly identified. In *Gaughf Properties, L.P. v. Commissioner*, 139 T.C. 219, 234 (2012), *aff'd*, 738 F.3d 415 (D.C. Cir. 2013), we held that section 6229(e) applies to indirect partners.

III.   *Analysis*

According to respondent, section 6229(e) kept the limitations period open with respect to Mr. Jump; thus, when the Milling FPAA was issued, the assessment against Mr. Jump was not barred. Petitioner disagrees.[4]

For purposes of our analysis, we will assume that Mr. Jump was an unidentified partner, within the meaning of section 6229(e)(1), of

---

[4] In addition, petitioner argues that the period of limitations exception in section 6501(c)(10) does not apply here because American Milling's material adviser made timely and sufficient disclosures. Respondent concedes that this exception is not applicable, so we do not consider it.

**[\*8]** both American Boat and American Milling and remained unidentified with respect to both partnerships when the Milling FPAA was issued.[5] Also we understand that petitioner is not arguing that Mr. Jump filed a notification about the inconsistent treatment as set forth in section 6222(b).[6]

We already decided in *American Milling I* that the adjustments in the Milling FPAA were to American Milling's partnership items. Petitioner's Motion to Dismiss for Lack of Jurisdiction argued that the adjustments in the Milling FPAA were computational adjustments flowing from the American Boat FPAA, i.e., that those items were affected items and that respondent was required to assess the resulting tax liability directly against Mr. Jump within one year after the American Boat FPAA litigation concluded at the district court (pursuant to section 6229(d)(2)). Respondent contended that the adjustments in the Milling FPAA (although affected items of American Boat) were not computational adjustments but partnership items of American Milling. We upheld respondent's position and decided that the adjustments in the Milling FPAA were American Milling's partnership items and "not merely affected items" or computational adjustments. *American Milling I*, T.C. Memo. 2015-192, at \*12 n.14. Against this backdrop we now apply section 6229(e)(2).

### A.     *Section 6229(e)(2)(A)*

Section 6229(e)(2)(A) keeps the period of limitations open with respect to an unidentified partner if the IRS mails to the TMP the FPAA "before the expiration of the period otherwise provided under this section." Respondent argues that section 6229(e)(2)(A) applies. In respondent's words,

---

[5] Petitioner argues that Mr. Jump furnished identifying information to the IRS as required in Treasury Regulation § 301.6223(c)-1 and therefore he was not an unidentified partner under section 6229(e)(1) at the time the Milling FPAA was issued. If Mr. Jump was not an unidentified partner as described in section 6229(e)(1), then section 6229(e), including paragraph (2), would not apply. We need not decide this issue because we conclude below that neither of the remaining conditions in section 6229(e)(2) is satisfied.

[6] Petitioner does contend that respondent was on notice about any inconsistencies, but we need not decide whether this was sufficient for purposes of section 6222(b) because of our conclusion that the American Boat FPAA is the wrong FPAA as we explain below.

[*9]   failure to disclose the ultimate taxpayer, David Jump, on the 1998 American Boat Form 1065 results in the period to assess tax attributable to the items of American Milling affected by the partnership items of American Boat being open at the time the FPAA dated January 18, 2013, was issued to the Tax Matters Partner of American Milling.

Petitioner counters that respondent did not issue the Milling FPAA within the period prescribed in section 6229(e)(2)(A) and whether the American Boat FPAA was issued timely is irrelevant.

We understand respondent's reasoning to be as follows. Because (1) section 6229(e) keeps the period of limitations open with respect to both partnership items and affected items, and (2) the items adjusted in the Milling FPAA are both *partnership items* of American Milling and *affected items* of American Milling (as items affected by the American Boat partnership items), then (3) for the purposes of section 6229(e)(2)(A), we must look at when the American Boat FPAA was issued and not when the Milling FPAA was issued. That is, because the items are affected items flowing from American Boat through American Milling to Mr. Jump, the American Boat FPAA is the FPAA that counts for determining the period of limitations. And, because (1) the American Boat FPAA was issued within the period prescribed by section 6229(e)(2)(A), and (2) Mr. Jump was an undisclosed partner of American Boat, (3) the period to assess against Mr. Jump the tax attributable to the partnership items in the Milling FPAA was open at the time the Milling FPAA was issued in January 2013.

Respondent's argument works only if we can ignore the Milling FPAA and treat the partnership items in it as *affected items* of American Milling. The parties do not dispute that the American Boat FPAA was issued within the prescribed limitations period, and they do not dispute that the Milling FPAA was not. Their argument focuses specifically on which FPAA counts for purposes of section 6229(e)(2).

We agree that section 6229(e) keeps the period of limitations open with respect to both partnership items and affected items (if other conditions are met). But the same items cannot be both partnership items and affected items *with respect to the same entity*. *See United States v. Woods*, 571 U.S. 31, 39 (2013) (stating that affected items "are affected by (but are not themselves) partnership items"); *see also Malone v. Commissioner*, 148 T.C. 372, 375–77 (2017) (explaining that if something is not a partnership item, then it is, by definition, a

**[\*10]** nonpartnership item and that affected items are nonpartnership items). That is so, because partnership items are determined at the partnership level in a single partnership-level proceeding (like this one). *See* §§ 6221, 6231(a)(3). Affected items are determined at the partner level, once the partnership-level proceeding is over. *See* § 6225. We have jurisdiction only with respect to partnership items in a partnership-level proceeding. *See* § 6226(f). We do not have jurisdiction to determine partner-level items in a partnership-level proceeding. *See id.*

Respondent in *American Milling I* convinced us that the adjustments in the Milling FPAA were partnership items of American Milling, not merely affected items flowing from American Boat through American Milling ultimately to Mr. Jump. Now, to satisfy section 6229(e)(2)(A), respondent asks us to conclude that *the same items* are also affected items of American Milling. But if that were the case, then they would be determined at the partner level (that is, Mr. Jump's level) and this TEFRA partnership-level proceeding would not be necessary or appropriate. Respondent cannot have it both ways.

In effect respondent asks us to ignore an FPAA of a pass-through partnership when determining whether an FPAA issued to that pass-through partnership was issued within the prescribed limitations period. But the statute provides no basis for looking beyond the Milling FPAA as respondent argues. And because the Milling FPAA, the FPAA before us, was not timely under section 6229(e)(2)(A), that section does not hold open the period of limitations for assessment against Mr. Jump.

B.      *Section 6229(e)(2)(B)*

Section 6229(e)(2)(B) extends the period of limitations with respect to an unidentified partner when the partner reports items on his personal tax return inconsistently with how those items are reported on the partnership return and fails to notify the IRS about the inconsistent treatment of a partnership item for that taxable year.

Respondent does not argue that Mr. Jump treated American Milling's partnership items inconsistently with American Milling's reporting, but rather that Mr. Jump and American Milling treated American Boat's, the source partnership's, items inconsistently with American Boat's reporting, *see* Treas. Reg. § 301.6222(a)-2, and that Mr. Jump failed to notify the IRS about the inconsistent treatment as required by section 6222(b) and Treasury Regulation § 301.6223(c)-1(b)(2) and (3). That inconsistent treatment between American Boat and

[*11] Mr. Jump's reporting, coupled with Mr. Jump's failure to report the inconsistency, according to respondent, kept the period of limitations open pursuant to section 6229(e)(2)(B) when the Milling FPAA was issued. Petitioner argues that we compare only the reporting of partnership items on Mr. Jump's and American Milling's returns; we do not consider American Boat's return at all.

A partner must either report partnership items consistently with the partnership's return or file Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), in which it either notifies the IRS of the inconsistent treatment or requests an administrative adjustment of the partnership item. *See* §§ 6222(a) and (b), 6227(a). In the absence of either notification or request for administrative adjustment, a partner who treats items inconsistently with the partnership's treatment may be assessed a deficiency, without notice, as a computational adjustment. *See* § 6222(c). We do not have jurisdiction to redetermine a deficiency related to "the assessment or collection of any computational adjustment." § 6230(a)(1).

Had respondent determined that Mr. Jump's reporting position was inconsistent with American Boat's, he could have made computational adjustments to Mr. Jump's return. And section 6229(e) would have held open the limitations period for assessment against Mr. Jump so long as he was an unidentified partner of American Boat. But respondent instead issued the Milling FPAA initiating a partnership-level proceeding. As we explained above, in *American Milling I*, T.C. Memo. 2015-192, at *12 n.14, we concluded that the adjustments in the Milling FPAA were not computational adjustments and could not be assessed directly against Mr. Jump without the intervening partnership-level determination. In other words, respondent could not make computational adjustments to Mr. Jump's return after the conclusion of the American Boat litigation; determinations at the American Milling level (that is, the intervening partnership-level) were necessary.

Respondent cites *Gaughf Properties* in support of his attempt to shift our focus from American Milling to American Boat for purposes of section 6229(e)(2)(B). In *Gaughf Properties* we decided that the basis and the nature of the contributed property were treated differently by the indirect partners and the partnership. The partners' defense in *Gaughf Properties* was that the inconsistency reported by intermediary partners should not be attributed to indirect partners. The Court rejected that defense: it held that inconsistent treatment by disregarded entities and

**[\*12]** an S corporation also constituted inconsistent treatment by indirect partners because the income and losses flowed through to the indirect partners' personal returns. *Gaughf Props., L.P.*, 139 T.C. at 236. The problem with respondent's application of *Gaughf Properties* is that he ignores the intervening Milling FPAA. In *Gaughf Properties* we considered the timeliness of the source partnership FPAA. As we have said above, the timeliness of the source partnership FPAA (the American Boat FPAA) is not before us. Rather the statute directs us to the partnership from which "any partnership item . . . for such taxable year" arose. That partnership is American Milling.

Under the plain wording of the statute, we must consider the partnership items that flow to Mr. Jump. Those were American Milling's partnership items determined in the Milling FPAA. Because Mr. Jump did not file inconsistently from American Milling, section 6229(e)(2)(B) did not keep the period of limitations open with respect to Mr. Jump when the Milling FPAA was issued.

IV.    *Conclusion*

We hold that the statutory period for assessing tax attributable to the partnership items (or affected items) of American Milling was not open under section 6229(e) with respect to Mr. Jump on the date the Milling FPAA was issued.

In reaching our holding, we have considered all arguments made and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for petitioner.*